# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-1731V
UNPUBLISHED

|  |  |
|---|---|
| MARY JO ACCETTA,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: June 11, 2020<br><br>Special Processing Unit (SPU); Findings of Fact; Onset; Influenza (Flu) Vaccine; Pneumococcal Conjugate Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Danielle Strait*, Maglio Christopher & Toale, PA, Seattle, WA, for Petitioner.

*Mark Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On November 3, 2017, Mary Jo Accetta filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as the result of receiving the influenza ("flu") and pneumococcal conjugate vaccines in her left arm on October 1, 2015. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Based on the record as a whole and for the reasons discussed below, I find that Petitioner's SIRVA onset likely began within 48 hours of vaccine administration, as required for a SIRVA Table claim. Furthermore, I find by preponderant evidence that Petitioner is entitled to compensation under the Vaccine Act.

I.  **Relevant Procedural History**

In support of her claim, Petitioner filed medical records and her affidavit on November 9, 2017. ECF No. 7. She submitted additional medical records over the following year. ECF Nos. 23, 26, 29. The parties then spent the next several years attempting to settle the case, but later filed a joint status report on February 19, 2020, informing me that their efforts proved unsuccessful. ECF No. 48. Petitioner also requested her case be withdrawn from SPU, and indicated her intention to move for rulings on the record. After a status conference in March 2020, the parties agreed that a ruling on the record on the issue of entitlement (specifically whether Petitioner's shoulder injury occurred within 48 hours of vaccination) could help resolve the case, and I invited them to brief the matter. ECF No. 49.

Petitioner filed a motion for a ruling on the record regarding entitlement on April 15, 2020 with a supporting memorandum. Motion for Findings of Fact and Conclusions of Law Regarding Entitlement and Petitioner's Memorandum ("Motion"). ECF No. 50. Petitioner contended that she met her burden of proof for a Table SIRVA claim based on medical records. Respondent argued in a response brief that Petitioner did not prove by preponderant evidence that she suffered the symptoms of a SIRVA within 48 hours of vaccine administration. Respondent's Rule 4(c) Report and Response to Petitioner's Entitlement Brief ("Response"). ECF No. 51. Petitioner replied on April 21, 2020. Petitioner's Reply to Respondent's Combined Rule 4(c) Report and Response on Motion ("Reply"). ECF No. 52.

Petitioner's motion is now ripe for adjudication.

II.  **Relevant Factual History**

Petitioner received intramuscular injections of the flu and pneumococcal conjugate vaccines in her left deltoid on October 1, 2015, at the office of her primary care provider ("PCP"). Ex. 2 at 32, 91-92. She tolerated the injections well according to the treatment note. *Id*. at 32. At the time of vaccination, her medical records did not show prior left shoulder or arm injury, disease, or dysfunction. *See generally* Ex. 2.

Petitioner returned to her PCP eleven days later, on October 12, 2015, with complaints of toenail fungus, anxiety, and personal problems. Ex. 2 at 29. There is no mention of shoulder pain in the treatment note, and her PCP did not perform a review of systems. *Id*. Then, on October 22, 2015, Petitioner presented to her PCP for a genetic

consultation related to hereditary cancer. *Id*. at 25. The PCP noted myalgias and pain localized to one or more joints without specifying which joint. *Id*. at 27.

On October 30, 2015, Petitioner sought physical therapy ("PT") for left shoulder pain and dysfunction at Alamitos Physical Therapy Associates. Ex. 6 at 1. Petitioner listed the date of onset of her pain as October 4, 2015 (three days post-vaccination), in a patient registration form. *Id*. She also described the two vaccinations on October 1, 2015, noting that her condition began with soreness and weakness, then progressed to muscle spasms, decreased range of motion ("ROM"), and pain with daily activities. *Id*. at 3. The physical therapist assessed Petitioner on November 2, 2015 and diagnosed her with moderate muscle tightness following vaccinations in the left shoulder one month ago. *Id*. at 9. The physical therapist noted "onset of left shoulder pain after vaccinations for influenza and pneumonia in the left deltoid." Ex. 6 at 11. Petitioner was discharged from physical therapy on November 19, 2015, after six sessions because she had "achieved goals per initial evaluation." *Id*. at 6.

On November 23, 2015, Petitioner returned to her PCP to follow up on the genetic consultation. Ex. 2 at 16. The treatment note now (and in contrast to records from the prior October) reflected an active problem of upper left arm joint pain. *Id* at 16, 18-19.

Petitioner next sought treatment for her left shoulder from an orthopedic specialist, Dr. Timothy Gibson, on January 21, 2016. Ex. 1 at 7-8. Dr. Gibson wrote in the treatment note that Petitioner reported arm pain starting after a combined pneumonia and flu vaccine on October 1, 2015. *Id.* at 7. Dr. Gibson diagnosed Petitioner with adhesive capsulitis and noted that she had been in pain for about three and a half months. *Id*. at 8. He ordered an MRI to see if there was any other pathology since the shoulder condition seemed to be related to an injection. *Id*. at 8. Petitioner followed up with Dr. Gibson on January 25, 2016 to review the MRI which showed findings consistent with frozen shoulder. *Id*. at 5-6.

On January 22, 2016, Petitioner discussed her shoulder with her PCP informing her that she had researched potential side effects and adverse reactions to the pneumococcal vaccine. Ex. 2 at 12. Petitioner requested her PCP complete a form detailing the adverse reaction and submit it to the CDC. *Id*. A VAERS form[3] was completed on January 27, 2016, identifying October 1, 2015 as the onset of the adverse vaccine event. Ex. 19. The form included a description of initial localized left shoulder pain followed by decreased flexion and abduction. *Id*.

Petitioner began a second round of PT for left shoulder pain on January 26, 2016, at Core Physical Therapy. Ex. 3 at 5. The date of onset of the condition was listed in the record as October 1, 2015. *Id*. Under history of present condition, the physical therapist noted in part as follows: "On 10/1/15, patient received 2 vaccination shots at the area of

---

[3] VAERS stands for Vaccine Adverse Event Reporting System. *See* Ex. 19.

the L deltoid insertions. She experienced mild to moderate muscle soreness which she knew was normal, but over time soreness did not improve and gradually worsened." *Id*.

During the second session of PT at Core Physical Therapy, Petitioner complained of an onset of dizziness when she rotated her head to the right. Ex. 3 at 12. The dizziness decreased within 30 seconds and the physical therapist recommended Petitioner see a specialist for further assessment. *Id*. Petitioner returned to PT on February 15, 2016 after taking a break to see a specialist about the dizziness. *Id*. at 14. She was discharged from PT due to "severe bouts of vertigo related to muscle tightness secondary to adhesive capsulitis." *Id*. at 14-15.

Petitioner sought treatment from House Ear Clinic for the dizziness and vertigo. Ex. 4 at 5. At the clinic on February 1, 2016, Petitioner described feeling like a train hit her when she had her shoulder stretched at PT. Ex. 5 at 9. The doctor diagnosed her with tinnitus and vertigo and referred her to a neurologist. *Id*. at 11. On February 9, 2016, Petitioner reported dizziness since November 2015, and she described a vaccination in her left shoulder leading to frozen shoulder and neck stiffness. *Id*. at 16. The neurologist at the House Ear Clinic diagnosed Petitioner with dizziness related to BPPV, cervicogenic dizziness, and anxiety. *Id*. at 17. By March 18, 2016, Petitioner was reporting that the dizziness had improved and the provider at the clinic indicated that the most likely etiology for the dizziness was multifactorial and included BPPV. *Id*. at 20.

Petitioner saw neurologist, Dr. Beth Lo, on February 29, 2016 for the vertigo. Ex. 4 at 8. Petitioner described receiving vaccines on October 1, 2015 and struggling since then with head pressure that increased with shoulder exercises. *Id*. The neurologist noted that vaccines can be associated with neurologic symptoms but doubted that Petitioner's sudden onset of headache, vertigo, and tremor was associated with vaccination. *Id*. at 10. On April 5, 2016, Petitioner reported to the neurologist that the vertigo was better and that she was doing exercises on her own for left shoulder capsulitis. *Id*. at 5. The neurologist indicated that it was not clear that Petitioner's head pressure and vertigo were related to the vaccines. *Id*. at 6.

On March 16, 2016, Petitioner returned to her PCP, reporting ongoing left shoulder symptoms.  Ex. 2 at 8. The doctor noted Petitioner's preference against cortisone injection treatment. *Id*. Petitioner indicated some improvement in range of motion and continuation of home exercises. *Id*. at 8-11.

In December 2016, Petitioner suffered a fall related to a vasovagal syncope episode. Ex. 7 at 71.

Petitioner returned to Dr. Gibson on October 14, 2019 for left shoulder pain. Ex. 20 at 4. Dr. Gibson ordered an MRI that showed a partial thickness tear of the supraspinatus near the junction of the supraspinatus and infraspinatus. *Id*. at 8. There was a small amount of fluid in the subacromial/subdeltoid bursa that could represent mild bursitis.  *Id*.  Petitioner followed up with Dr. Gibson on October 24, 2019 who diagnosed

her with a partial left rotator cuff tear and mild adhesive capsulitis. *Id*. at 2. He recommended surgically repairing the partial tear. *Id*.

Petitioner submitted an affidavit, dated October 13, 2017, in connection with this matter. Ex. 9. She stated in the affidavit that she received flu and pneumococcal conjugate vaccinations in her left arm on October 1, 2015. *Id*. at ¶ 4. She described her arm feeling sore later that same day, but she assumed this was a usual response to vaccinations. *Id*. at ¶ 5. The soreness did not diminish in a couple of days but rather evolved into "true pain and dysfunction." *Id*. at ¶ 6. She noted that she is a retired physical therapist and first employed her own knowledge of physical therapy exercises but soon sought the assistance of another physical therapist at Alamitos Physical Therapy. *Id*. at ¶ ¶ 2, 7. Petitioner described suffering severe dizziness, nausea, and vertigo in February 2016 triggered by a maneuver in physical therapy. *Id*. at ¶ 9.

### III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A Petitioner may prevail on her claim if she has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the Table). Section 11(c)(1)(C)(i). The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). If a claimant establishes that she has suffered a "Table Injury," causation is presumed.

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. See Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that she suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table. *See* Vaccine Injury Table: Qualifications and aids to interpretation.  42 C.F.R. § 100.3(c)(10). The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was

5

administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.*

### IV.   Analysis

Petitioner alleges that she developed a SIRVA following receipt of the flu and pneumococcal conjugate vaccines, both covered vaccines in the Table. Respondent does not challenge that Petitioner received the vaccines and suffered the residual effects of the injury for more than six months. Rather, Respondent argues that Petitioner has not established that she suffered a Table SIRVA because medical records do not document symptoms or manifestation of onset of a shoulder injury within 48 hours of the vaccinations. Response at 8. For the reasons set forth below, I find that Petitioner has established that she suffered a SIRVA as set forth in the Vaccine Injury Table.

### A.   Petitioner did not have a history of pain, inflammation, or dysfunction of the affected shoulder prior to vaccine intramuscular administration.

Petitioner began treating at Hoag Medical Group on June 20, 2013. Ex. 2 at 66. Her past medical history was recorded at the first visit and did not include reference to shoulder pain, inflammation, or dysfunction. *Id*. Over the following two years, she was treated for such conditions as depression, high blood pressure, pelvic pain, sinusitis, dyslipidemia, vertigo and dizziness. *Id*. at 36, 40, 50, 56, 58. There is no indication, and Respondent does not assert, that Petitioner had a history of left shoulder impairment prior to the two vaccinations that she received on October 1, 2015.

### B.   Onset occurred within the specified time frame.

Petitioner must show that she experienced the first symptom or onset within 48 hours of vaccination and that her pain occurred within the same 48-hour period in order to meet the definition of a Table SIRVA. 42 C.F.R. § 100.3. This is the only requirement of a Table SIRVA that Respondent maintains Petitioner has failed to satisfy.

Respondent initially argues that Petitioner's pain could not have begun sooner than 11 days after vaccination, pointing out that the first record after the October 1, 2015 vaccinations is from Petitioner's appointment with her PCP on October 12, 2015. Response at 8. In so maintaining, Respondent seems to be arguing that the only way a petitioner can show she experienced symptoms within 48 hours of vaccination is with contemporaneous records from that timeframe. Petitioner, however, correctly notes in her reply brief that the Vaccine Act does *not* require that symptoms be recorded within a

specific time frame or manner, only that onset actually occurs in the proper time frame. Reply at 1-2. Indeed, a special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation *was not recorded or was incorrectly recorded as having occurred outside such period*." Section 13(b)(2). Thus, the absence of a specific record objectively establishing onset within 48 hours of vaccine administration is not a bar to satisfying this SIRVA Table claim requirement.

Respondent also argues that substantively the record does not preponderate on this issue in Petitioner's favor. As Respondent observes, Petitioner returned to her PCP on October 12, 2015, and at that time made no mention of shoulder pain or any reference to Petitioner's left shoulder. Ex. 2 at 29. Rather, the first reference to joint pain of any sort was on October 22, 2015, but Petitioner's PCP does not specify which joint in the medical record. *Id*. at 27. However, Petitioner self-referred to a physical therapist for left shoulder pain only a week later, at which time she unquestionably attributed her condition to the two vaccinations, describing initial soreness and weakness progressing to muscle spasms, decreased ROM, and pain. Ex. 6 at 3. Petitioner did note the date of onset of her condition as October 4, 2015, but clarified in the patient history form that her condition began with soreness after two vaccinations on October 1, 2015.  In the physical therapist's notes, her injury is described as occurring after two vaccinations on October 1, 2015.  Ex. 6 at 1, 3.

In all subsequent records, Petitioner described shoulder symptoms as starting after the October 1, 2015 vaccinations when she sought treatment for her left shoulder in January 2016. Dr. Gibson wrote in a treatment note on January 21, 2016 that Petitioner reported arm pain starting after vaccination on October 1, 2015.  Ex. 1 at 7.  At Petitioner's second round of PT for left shoulder pain, the date of onset of the condition was again listed in the record as October 1, 2015. Ex. 3 at 5. On January 27, 2016, a VAERS form was completed reporting October 1, 2015 as the onset of injury. Ex. 19. The form included a description of localized left shoulder pain followed by decreased flexion and abduction. *Id*.

Even more persuasive are Petitioner's explanations for why she did not immediately inform her PCP of her pain. As set forth in her affidavit, Ms. Accetta has averred that her arm felt sore later in the same day of the vaccinations, but she assumed this was a usual response. Ex. 9 at ¶ 5. The soreness did not diminish in a couple of days but rather evolved into "true pain and dysfunction." *Id*. at ¶ 6. She noted that she is a retired physical therapist and first employed her own knowledge of physical therapy exercises before seeking the assistance of another physical therapist at Alamitos Physical Therapy. *Id*. at ¶ ¶ 2, 7.

7

It is not uncommon for a SIRVA petitioner to delay treatment, thinking his/her injury will resolve on its own. In this case, Petitioner is a retired physical therapist, so I find her description of attempting to treat the initial soreness on her own to be credible. Once Petitioner realized she needed additional medical treatment because the symptoms were intensifying, she repeatedly linked the onset of her pain to the October 1, 2015 vaccinations. She may not have sought treatment in the first 48 hours after the vaccinations or even the initial weeks after, but the records from October 30, 2015 onwards consistently describe initial soreness after vaccinations leading to additional symptoms that increased in severity.

Admittedly, the proof regarding onset presents a close case. It is always reasonable to expect individuals to inform medical providers of pain, and the record in this case establishes that Ms. Accetta had several opportunities to do so after the vaccinations at issue. In other cases, the balance of similar factors would properly lead to a finding that Table onset had *not* been established. But Petitioner has demonstrated persuasive reasons to find her credible in her decision to delay treatment (or not mention pain despite opportunity), and the closeness of the evidence overall (coupled with the fact that within a month of vaccination, she was telling treaters of her onset) counsel in favor of erring on the side of a finding for Petitioner. Although this is a close call, petitioners are accorded the benefit of close calls in the Vaccine Program. *Roberts. v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Spec. Mstr. Aug. 29, 2013).

Based on the above, I find that Petitioner's affidavit, describing left shoulder pain on the day of the vaccinations, to be consistent with the medical records created over the four months following the vaccinations. I thus find there is evidence that establishes that Petitioner's left shoulder pain more likely than not began on the day of the vaccinations, and thus the onset was within 48 hours of vaccination.[4]

### C. Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered.

Other than some passing references to neck pain in connection with the vertigo treatment, there is no indication that Petitioner experienced pain or limited ROM in any area other than her left shoulder. Respondent does not dispute this fact. I find that

---

[4] Respondent also argues that Petitioner's dizziness and vertigo did not occur until January 28, 2016, almost four months after vaccination, and is outside the 48-hour timeframe required by the Table.  Response at 11.  However, Petitioner did not claim in her Petition or her Motion that the vaccinations caused the dizziness and vertigo.  Rather, she asserts that the treatment for the SIRVA caused additional damages in the form of a vertigo episode.  The timing of the episode of vertigo is not relevant to my analysis of whether Petitioner has established the elements of a SIRVA.

Petitioner's pain and reduced range of motion were limited to the shoulder in which the intramuscular vaccine was administered.

### D. No other condition or abnormality is present that would explain the patient's symptoms.

Petitioner's medical records contain no evidence of any condition or abnormality that would explain her symptoms. Further, respondent does not contend that any other condition or abnormality would explain Petitioner's symptoms.

## V. Conclusion

Accordingly, I grant Petitioner's motion and find that Petitioner suffered a Table SIRVA as a result of her October 1, 2015 vaccinations and is therefore entitled to compensation under the Vaccine Act. A damages order will issue separately.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master