# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 17-1731V
UNPUBLISHED

| | |
|---|---|
| MARY JO ACCETTA,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: March 31, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Pneumococcal Conjugate<br>Vaccines; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Danielle Strait, Maglio Christopher & Toale, PA*, Seattle, WA, for petitioner.

*Mark Hellie, U.S. Department of Justice*, Washington, DC, for respondent.

## DECISION AWARDING DAMAGES[1]

   On November 3, 2017, Mary Jo Accetta filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left Shoulder Injury Related to Vaccine Administration (SIRVA) as a result of influenza ("flu") and pneumococcal conjugate vaccines administered on October 1, 2015. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU") – and a Motions Day hearing was held to resolve damages in the case after the parties were unable to settle.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, **I find that Petitioner is entitled to an award of damages for actual pain and suffering in the amount** $**95,000.00.**

I.    **Relevant Procedural History**[3]

After the claim's initiation, Respondent in March 2019 indicated a willingness to engage in settlement discussions. ECF 33. The parties attempted informal resolution through February 2020, when they reported an impasse. ECF 48. Petitioner subsequently filed a motion for a ruling on the record and on the issue of entitlement. ECF 50. A "Findings of Fact and Ruling on Entitlement" was issued on June 11, 2020, and the parties subsequently returned to damages discussions. ECF 54. In November 2020, Petitioner requested that she be allowed to brief the disputed damages issue. ECF 62. Once briefing was completed, I scheduled the matter for an expedited SPU Motions Day hearing and ruling based upon all the evidence filed to date and the parties' briefing. ECF 70. That hearing was held on March 26, 2021.[4]

In her briefs, Petitioner requests that I award her $135,000.00 for actual and future pain and suffering. ECF 65, ECF 68, and ECF 72. Respondent proposes that I award the lesser amount of $70,000.00. ECF 69. Pain and Suffering is the only disputed damages issue to be resolved, and the only component of damages to be included in Petitioner's award.

II.    **Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

---

[3] I also adopt the procedural history set forth in ECF 54.

[4] An official recording of the proceeding was taken by court reporter. A link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the Minute Entry dated March 26, 2021. *See also* www.uscfc.uscourts.gov/trans (last visited March 29, 2021).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Prior pain and suffering awards in comparable cases also bear on the resolution herein. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Human Servs.,* 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.   Prior SIRVA Pain and Suffering Determinations[6]

As of January 1, 2021, 1,875 SPU SIRVA cases had been resolved since the inception of SPU. Compensation was awarded in 1,820 of these cases. In only 47 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent, setting forth what similarly situated petitioners should

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[6] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, publicly available. All figures and calculations cited are approximate.

3

also receive.[7] In the 47 SPU SPIRVA cases that required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering ranged from $40,000.00 to $185,000.00, with a median award of approximately $85,000.00. Only four cases have involved an award for future pain and suffering.[8]

### IV.    Appropriate Pain and Suffering Award

In this case, awareness of the injury is not disputed. I therefore analyze principally the severity and duration of Petitioner's injury. In so doing, I review the record as a whole to include the medical records filed and all assertions made by the parties in written documents, in Petitioner's video affidavit,[9] and at the expedited hearing held on March 26, 2021. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience in adjudicating those cases. However, I ultimately base my determination on the circumstances of this case.

Petitioner's SIRVA, plus her related treatment and recovery, was moderately more severe than that experienced by many other similarly-situated petitioners who do not undergo surgery. After receiving the flu and pneumococcal vaccinations in her left shoulder on October 1, 2015, Petitioner initially assumed that her pain was a normal response to receiving vaccines. Ex 2 at 91-92, Ex 9. Due to her professional experience,[10] Petitioner initially attempted home exercises to treat her pain. Ex 9. After this proved unsuccessful, she visited a physical therapist on October 30, 2015. Ex 6 at 1, 3. She subsequently attended six physical therapy ("PT") sessions over the course of three weeks. *Id*. at 6.

Despite Petitioner's complaints of constant pain, decreased range of motion, and stiffness, her first visit to a physician for treatment of her shoulder did not occur until January 21, 2016.[11] Ex 1 at 7. At this visit with Dr. Timothy Gibson, an orthopedic surgeon,

---

[7] *See, e.g., Sakovits v. Sec'y of Health & Human Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[8] A detailed discussion of the statistical data for all SIRVA cases resolved in SPU from inception through January 2021 can found in the following decisions: *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020); *Tjaden v. Sec'y of Health & Human Servs.*, No. 19-0419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

[9] *See* ECF 71, CD received by the clerk's office on March 16, 2021.

[10] Petitioner is a retired physical therapist. Ex 9.

[11] Petitioner did visit her primary care physician (PCP) on October 12 and October 22, 2015. Ex 2 at 25, 29. Records from these visits do not reference Petitioner's left shoulder. *Id*.

4

physical examination was normal except for positive impingement testing. *Id*. at 7-8. An MRI performed that same day showed severe tendinopathy and partial tearing of the distal supraspinatus tendon, mild tendinopathy of the subscapularis tendon, mild subacromial/subdeltoid bursitis, and fraying and suspected tearing of the anterior inferior labrum. *Id*. at 9-10. Dr. Gibson referred Petitioner to PT, which she began on January 26, 2016. Ex 3 at 5. After three sessions, Petitioner was discharged due to complaints of vertigo.[12] *Id*. at 15.

At an appointment with her primary caregiver on March 16, 2016, Petitioner reported that she had stopped formal PT but continued with home exercises. Ex 2 at 8. She further stated "d[id] not plan on following up with ortho given that her symptoms are improving and [she] is not inclined to receiving corticosteroid injections." *Id*. In fact, from April 2016 through September 2019, Petitioner did not receive any medical treatment for her shoulder.[13]

In October 2019, Petitioner returned to Dr. Gibson with complaints of increasing shoulder pain. Ex 20 at 4. Physical examination revealed "vague and nonspecific tenderness" and decreased internal and external rotation. *Id*. An updated MRI showed continued partial thickness tearing of the supraspinatus and mild bursitis in the subacromial/subdeltoid bursa. *Id*. at 8. While Dr. Gibson recommended surgery, Petitioner instead preferred to continue with home exercises. *Id*. at 2. After a follow-up appointment with Dr. Gibson on 10/24/19, Petitioner did not return for treatment of her shoulder for almost one year. Ex 24 at 6, 8. At her next appointment, on September 10, 2020, Petitioner complained of persistent left shoulder pain and weakness. *Id*. at 6. Physical examination revealed stable findings when compared with the October 2019 visits. *Id*. Dr. Gibson again recommended surgery, which Petitioner agreed to consider. *Id*. at 7.

In both her written affidavit and video interview, Petitioner alleges that her continued symptoms, as well as the anticipation of having surgery at her age, have

---

[12] In her pre-hearing brief, Petitioner alleged that her vertigo symptoms, which started during a "specific maneuver" at a PT visit on January 28, 2016, were "at least partially aggravated" by her SIRVA. ECF 65 at 3. On February 1, 2016, Petitioner visited an otolaryngologist, who noted that the etiology for her dizziness was multifactorial, with one contributing component possibly being her shoulder pain. Ex 5 at 9, 17. Petitioner was also evaluated by a neurologist on February 29, 2016, who stated that her neurologic symptoms "do not appear to be . . . related to an autoimmune process" that could be linked to the vaccines. Ex 4 at 6, 10. Regardless of the source of her symptoms, Petitioner reported that her vertigo had improved with medication by April 2016. *Id*. at 5. The medical record reflects no further complaints of dizziness or vertigo.

[13] Petitioner did decline a flu shot in October 2017 (due to her history of shoulder pain) and discussed her shoulder injury with her PCP in April 2019 in the context of protecting herself from a measles outbreak occurring in California. Ex 22 at 21, 43.

5

caused stress and exacerbated her pre-existing anxiety disorder. *See* Ex 9, Ex 23, and CD received by the clerk's office on 3/16/21. Petitioner also argues that her prior employment as a physical therapist gives her a unique perspective regarding her SIRVA, surgery, and potential complications, increasing her stress compared to a "typical" petitioner. *Id*. Finally, she explains that she delayed her surgery due to the COVID-19 Pandemic but anticipates having it sometime in the future – although she has also indicated that she may in fact "live" with her injury and not seek surgery. *Id*.

As I informed the parties during the Motions Day hearing, the question in this case is not whether Petitioner is entitled to *any* compensation for her pain and suffering, but rather *what* amount of compensation is justified, based upon the facts of the case and considered relevant input. This determination is not an exact science but more of an art. While it is tempting to "split the difference" and award an amount halfway between the amounts proposed by the parties (acknowledging that in this case, the parties' respective positions reasonably "frame" high and low potential awards), each petitioner deserves an examination of the specific facts in his or her case. Thus, while amounts ultimately awarded may end up falling somewhere in the range between the awards proposed by both parties, this result flows from a specific analysis of Ms. Accetta's personal circumstances.

Petitioner argues that because Dr. Gibson recommended surgery, her case should be considered comparable to cases where a petitioner has already *undergone* surgery at the time of the damages decision. She references five surgical cases[14] and one non-surgical case[15] in support of her request for $135,000.00 in pain and suffering. In particular, she asks that her award be higher than what was allowed in *Knudson* and *Dobbins,* because surgery was generally effective at alleviating those petitioners' pain, whereas Petitioner continues to experience symptoms five years after her injury. Petitioner makes a similar argument with regard to *Gunter*, arguing that even though the claimant in that case continued to experience some pain after surgery, the total treatment time was less than that of Petitioner herein.

---

[14] *Dobbins v. Sec'y Health & Human Servs*., No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for actual pain and suffering); *Stoliker v. Sec'y Health & Human Servs*., No. 17-0990V, 2020 WL 5512534 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $120,000.00 for actual pain and suffering); *Knudson v. Sec'y Health & Human Servs*., No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for actual pain and suffering); *Reed v. Sec'y of Health & Human Servs*., No. 16-1670, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for actual pain and suffering); *Gunter v. Sec'y Health & Human Servs*., No. 17-1941V, 2020 WL 6622141 (Fed. Cl. Spec. Mstr. Oct. 13, 2020) (awarding $125,000.00 for actual pain and suffering). References to these decisions will be by the relevant petitioner's name.

[15] *Cooper v. Sec'y of Health & Human Servs*., No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 in pain and suffering).

In making such arguments, however, Petitioner fails to acknowledge that the record shows two significant gaps in her treatment. First, there was a 3 ½ year treatment gap for her shoulder from April 2016 (less than six months after vaccination) through September 2019. During this time, Ms. Accetta continued to experience mild pain on most days, but she considered it "manageable" and was "able to return to many of [her] regular activities." Ex 23. Second, while Petitioner reasonably may have delayed surgical intervention due to the Pandemic, Dr. Gibson first recommended surgery in *September 2019*, five months before the Pandemic began.[16] In fact, Petitioner did not return for treatment for almost one year after surgery was recommended. And she continues to have no definite plan to obtain surgery, with her video interview statements suggesting she is contemplating further self-care for any lingering effects from the injury.

Treatment gaps are "a relevant consideration in determining the degree of Petitioner's pain and suffering." *Dirksen v. Sec'y of Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201, at *9-10 (Fed. Cl. Spec. Mstr. Oct. 18, 2018). While the petitioners in *Stoliker* and *Gunter* also had gaps in their treatment, both received cortisone injections – and eventually underwent surgery. In addition, the recommendation for surgery in both *Stoliker* and *Gunter* occurred *after* their treatment gaps, and they underwent surgical intervention shortly after it was recommended. In contrast, Petitioner failed to receive any treatment for her shoulder for almost a year after surgery was first recommended. The fact that Petitioner's injury did not merit more invasive treatment on a shorter timeframe undercuts her allegations of its severity, and therefore supports a lesser pain and suffering award than Petitioner requests.

Petitioner's desire to avoid surgery is certainly understandable, and her past work as a physical therapist likely made her confident she could self-treat her symptoms. However, such a reasoned unwillingness to obtain more serious medical intervention differentiates this case from another non-surgical case such as *Fry*,[17] where the petitioner lived with her injury for over four years because she was *unable* to undergo surgery secondary to her age and multiple other comorbidities. The petitioner in *Fry* was also prescribed opiate medication, which caused significant side effects, while Petitioner has managed her pain with only over-the-counter medication for over five years.

---

[16] As noted above, Dr. Gibson also offered Petitioner a steroid injection, which she declined. Ex 1 at 6.

[17] *Fry v. Sec'y Health & Human Servs.*, No. 18-1091V, 2020 WL 8457671 (Fed. Cl. Spec. Mstr. Dec. 16, 2020) (awarding $120,000.00 for actual pain and suffering).

Respondent, by contrast, references *Knauss*[18] and *Marino*[19] in his brief to support a lower award, but those cases also present inapposite facts. In *Knauss*, the petitioner characterized his pain mild, underwent one corticosteroid injection, and reported resolution of his symptoms within one year. In *Marino*, the petitioner received one steroid injection and performed only a home exercise program for approximately two years. In contrast, Petitioner has consistently performed a home exercise program over the course of five years and sought out the advice of an orthopedic specialist who has recommended surgery. She clearly has had to deal with some ongoing sequelae, and her pain and suffering award should account for these factors.

In sum, when balancing the length of Petitioner's injury with the significant treatment gaps, I find that $95,000.00 in total compensation for actual pain and suffering is reasonable in this case. This award exceeds those in most cases where surgery was not performed and takes into account the fact that additional treatment has been recommended but is scaled to reflect that Petitioner has chosen to avoid additional intervention at this time. My award does not include a future component of pain and suffering, as I have reserved that only for cases where a strong showing is made that the claimant has suffered a permanent disability, or there are other extenuating circumstances that justify inclusion of a future component.

## V.   Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $95,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[20]

Accordingly, **I award Petitioner a lump sum payment of $95,000.00 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

---

[18] *Knauss v. Sec'y Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for actual pain and suffering).

[19] *Marino v. Sec'y Health & Human Servs.*, No. 16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for actual pain and suffering).

[20] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required.  *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The clerk of the court is directed to enter judgment in accordance with this decision.[21]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[21] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.